DOMAN (UNITED STATES v.). See Case No. 14,980.

DOMESTIC SEWING—MACH. CO. (SPRING v.). See Case No. 13,258.

DOMINGO, The (GOODRICH v.). See Case No. 5,543.

DOMINGUEZ (GRAHAM v.). See Case No. 5,664.

## Case No. 3,977.

DOMINY et al. v. ANCHORS, SAILS, ETC., OF THE D'ALBERTI.

[1 Ben. 77.][1]

District Court, E. D. New York. Oct., 1866.

SALVAGE AGREEMENT—TENDER—WEIGHT OF EVIDENCE—COSTS.

1. Where several wreckers were engaged by parties who had bought a wreck, to assist in saving the materials, and libelled the property saved to recover salvage compensation, the claimants insisting that the work was done under an agreement for a stipulated price, made with Dominy, one of the libellants, whose special authorization to make the agreement was disputed, *held*, that in a conflict of positive statements, the surrounding circumstances become of great importance, and that under the circumstances the agreement for a stipulated price must be held to have been made.

2. Even if there was no formal authorization of Dominy to make such an agreement for all the libellants, the evidence showed that he was the head and spokesman of the libellants, and they must have been cognizant that some agreement had been made by him, and must be deemed to have acquiesced in it.

3. No tender of the amount remaining due of the stipulated price, nor any payment into court with a plea of tender having been made, the libellants are entitled to a decree for that amount with their costs.

The libellants [Nathaniel Dominy and others] in this case were wreckers near Sag Harbor. The brig D'Alberti, having been driven ashore, was bought as a wreck by the claimants in this case, and the libellants did work in saving the rigging and other material of the wreck. They thereupon filed this libel against the articles saved, claiming to recover salvage. The claimants, on the other hand, insisted that the work was to be done for $75, under an agreement made by the libellants, through the libellant Dominy.

Mr. Gardiner and Mr. Scudder, for libellants.

Mr. Gleason and Mr. Benedict, for claimants.

BENEDICT, District Judge. This action is brought by several wreckers to recover salvage compensation for services performed by them at Montauk, in stripping and landing from the brig D'Alberti, certain anchors, chains, spars, sails and rigging, of the value of some fourteen hundred dollars. Upon the hearing, it was conceded on both sides, that no question as to the saving of the anchors and chains arises in this cause, the libel-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

lants claiming them as owners by purchase, and that title being in process of adjudication before a court of this state.

The only question before me, then, is as to the compensation for labor performed in saving the residue of the property. For this labor the libellants claim to be paid as salvors acting without any agreement as to price, while the claimants insist that the price was fixed by agreement before the work was undertaken.

I have examined with care, the very contradictory evidence introduced by the respective parties, and while endeavoring to give due weight to the arguments advanced on the part of the libellants, am constrained to hold that the weight of the testimony is in favor of the claimants. In such a conflict of positive statements in regard to matters of fact where there should be no dispute, the surrounding circumstances become of great importance. The circumstances attending this transaction, about which there is little or no dispute, seem to me to go far to sustain the theory of the defence. It can hardly be deemed probable that the claimants, having just bought this wreck in the manner described in the testimony, for the sole purpose of realizing a profit from the sale of the articles which could be saved from it, would, at the same time, request or allow a company of wreckers to perform the labor without some agreement as to the expense. Such an agreement is testified to by several witnesses, who swear with great distinctness to the details of the occurrence, and although positively denied by Dominy, must, upon the evidence, be held to have been made.

But it is insisted that if an agreement was made by Dominy, it cannot be binding upon the other libellants, in view of the positive evidence of Dominy and others of the libellants, that no authority to make such an agreement was ever conferred upon Dominy. Now, while it may well be that no formal or definite authorization of Dominy to make this contract in behalf of himself and his associates was ever given, still it is quite manifest that the actual relation of the libellants, as understood and acted on by them throughout the whole transaction, was that of a company of persons associated together for a common temporary purpose, with Dominy as their head and spokesman. Thus Dominy, acting for all, received money earned by the company in labor performed about the brig for the insurance company. He also received the money earned by the company in labor performed for Rockwell about the cargo. He not only received for all the money paid for labor performed by them on the brig, on the day of and before the sale to the claimants, but, acting for all, arranged to take the credit of these very claimants for it, and subsequently received it from them instead of from the master. When, during the performance of the work in question, money was needed to pay a man taken in to help them, Dominy was requested to apply, and did apply, to the claimants for $20, and received it on account of the work. Moreover, the job was undertaken by the libellants without any communication between the claimants and any of them, except Dominy, either as to rate of wages, number of men, or extent of the labor to be required, while at the same time it is not pretended that it was to be performed at day's wages. These and other circumstances in the case have convinced me, that the members of the company must have been cognizant of some agreement having been made by Dominy, which they are to be deemed to have acquiesced in, and under which they performed the services in question. Without, therefore, considering the evidence offered to show that $75 would be full compensation for the labor performed, I must hold that the compensation was fixed at that sum by agreement.

It does not appear that all of this price has been paid; the evidence shows payments amounting to $53.80, but fails to show more.

The libellants are therefore entitled to a decree for the balance, $21.20, against the property, excluding the anchor, and as there was no legal tender or payment into court with plea of tender, the libellants are entitled to their costs.